**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.H. and J.H.**

**No. 18-0245** (Webster County 17-JA-37 and 38)

## MEMORANDUM DECISION

Petitioner Mother N.F., by counsel Christopher G. Moffatt, appeals the Circuit Court of Webster County's February 13, 2018, order terminating her parental rights to H.H. and J.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary E. Sneed, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by relying on evidence not admitted, adjudicating her as an abusing parent, and in terminating her parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed a petition alleging substance abuse and domestic violence in the home in the presence of at least one child. According to the DHHR, petitioner informed the case worker that the children's father physically abused her in the past, but she was afraid of the father and covered up the injuries. Petitioner indicated that the domestic incident began after she gave the father a haircut that he did not like. Additionally, the DHHR alleged that petitioner showed law enforcement where the father kept his drug paraphernalia, smoking devices, and items that he used to rid his system of drugs to pass drug screens for his probation. The DHHR alleged that law enforcement asked both parents to voluntarily drug screen and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]In addition to these assignments of error, petitioner asserts that "[p]arents in abuse and neglect proceedings with mental disabilities who required modifications in services . . . [should] be able to assert an ADA claim if the state fails to make needed reasonable modifications in those services." However, this Court is not an appropriate venue to raise such claims and we decline to address this issue on appeal.

1

petitioner tested positive for methamphetamine. Petitioner admitted she used methamphetamine with the father while the children were asleep three days prior to the domestic incident.

The DHHR filed an amended petition in June of 2017 alleging that petitioner was determined to be a protected person by virtue of her mental impairment and that her parents previously were appointed as her co-guardians and co-conservators.[3] Additionally, the DHHR alleged that petitioner was recently evaluated by a psychologist who opined that she is incompetent and cannot make decisions for herself. The DHHR asserted that petitioner was unable to provide a fit and suitable home and properly maintain and care for herself or her children due to her mental capacity. One of petitioner's guardians was added as a party to the case and appointed an attorney.

In August of 2017, the circuit court held an adjudicatory hearing and heard testimony from a DHHR worker, a law enforcement officer, the father, and the psychologist that evaluated petitioner. According to the DHHR worker, petitioner stated that the father became angry with her, hit her with a baby swing, and that she escaped with one of the two children by leaving through the back window of their trailer. Additionally, petitioner informed the DHHR worker that the father used methamphetamine and became particularly angry when he tried to stop his use to prepare for drug screens. After both parents were drug tested, petitioner admitted to the DHHR worker that she recently used methamphetamine with the father while the children were in the home. The law enforcement officer corroborated the DHHR worker's testimony and added that petitioner led him to the room where the father kept his drug paraphernalia. The father testified that he offered the methamphetamine to petitioner and that she only used it that time. In regard to child care, the father testified that he and petitioner both cared for the children and that petitioner was able do her share of the care. Finally, the psychologist was admitted as an expert witness and testified that petitioner's low intellectual functioning raised concerns about her ability to care for herself. The psychologist testified that petitioner participated in a functional living scale which led the psychologist to conclude that petitioner was not competent to make her own decisions or take care of herself. According to the psychologist, petitioner was more susceptible to suggestions and could be led into bad decisions. The psychologist testified that because petitioner could not be expected to care for herself, she could not properly care for her children.[4] Following this testimony and counsels' argument, the circuit court reasoned a parent's inability to take care of herself and her children was sufficient for a finding of neglect, that the psychologist's testimony showed that petitioner was unable to care for herself or her children, and adjudicated petitioner for those reasons.

---

[3]The circuit court held an adjudicatory hearing prior to the filing of the amended petition where petitioner made admissions to the petition. However, due to discovery of petitioner's status as a protected person, the circuit court set aside the earlier admissions and held an adjudicatory hearing.

[4]Although the psychologist authored a written opinion, the DHHR did not attempt to admit that report until after it rested. Petitioner promptly objected to the untimely admission and the report was not admitted into evidence.

The circuit court held a dispositional hearing in September of 2017 and no further evidence was presented. The DHHR argued that petitioner's mental health issues resulted in an inability to make appropriate decisions and that her condition could not be remedied through services. Petitioner argued that evidence regarding her care of the children "was at best mixed." Ultimately, the circuit court found that petitioner was previously declared legally incompetent and that the DHHR proved by clear and convincing evidence that she lacked the ability to care for the children. Further, the circuit court found that petitioner could not make appropriate decisions for herself or the children as evidenced by the domestic violence and drug use in the home. Finally, the circuit court found that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the foreseeable future. The circuit court terminated petitioner's parental rights and that decision was memorialized in its February 13, 2018 order.[5] The circuit court granted petitioner post-termination visitation at the discretion of the children's placement. Petitioner now appeals that order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in relying on the psychologist's testimony and report when that report was not admitted into evidence. Petitioner asserts it is clear that the circuit court relied on the psychologist's report because the circuit court included a reference to the psychologist's "testimony and report" in its dispositional order. However, we find petitioner is entitled to no relief given that the psychologist's testimony alone provided ample evidence upon which to base adjudication. We have previously held

---

[5]The father's parental rights were also terminated. According to the parties, the children were placed with their paternal grandparents and their permanency plan is adoption in that home. Additionally, petitioner was granted post-termination visitation and continues to exercise that visitation.

"W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). In the adjudicatory order, the circuit court found that "[t]he record in this case and the evaluation performed by [the psychologist] does show that [petitioner] is unable to care for herself or her children." Although we acknowledge that the psychologist's report was not admitted into evidence, this finding was based on evidence obtained from the psychologist's testimony, which was uncontroverted. Petitioner did not object to the psychologist's testimony or attempt to discredit it in any way. In fact, on appeal, petitioner cites to no evidence in the record to contradict this expert testimony. Clearly, the circuit court found that testimony credible and persuasive. The mere mention of the report, a related but unadmitted piece of evidence, does not warrant reversal. Accordingly, we find no error in this regard.

Second, petitioner argues that the circuit court erred in adjudicating her as an abusing parent because the circuit court based her adjudication on her inability to care for herself and the children. Petitioner asserts, however, that the petition did not allege an inability to care for the children and, therefore, the circuit court's adjudication was erroneous. We disagree. West Virginia Code § 49-1-201 provides that a "neglected child" is a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education[.]" Additionally, West Virginia Code § 49-4-601(b) provides that "[t]he petition shall allege specific conduct including time and place, [and] how the conduct comes within the statutory definition of neglect or abuse with references thereto. . . ." In addition to the allegations of substance abuse and domestic violence, the DHHR alleged that petitioner was "incompetent and cannot make decisions for herself." Further, the allegation, labeled "N" in the amended petition, reads "[b]ased upon the foregoing, [the DHHR] believes that [petitioner] is unable to provide a fit and suitable home and properly maintain and care for the infant respondents due to her mental capacity and inability to care for herself." The petition adequately alleged petitioner's poor decision making and inability to provide a suitable home for the children and supported that allegation through the examples of domestic violence and substance abuse. Accordingly, we find that the circuit court did not err.

Finally, petitioner argues that the circuit court erred in terminating her parental rights because the DHHR failed to prove by clear and convincing evidence that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. We disagree. West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." Further, West Virginia Code § 49-4-604(c) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the parent has

4

"demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Upon these findings, the circuit court may terminate a parent's parental rights without the use of less-restrictive alternatives. Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

The circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected was based on sufficient evidence. According to the uncontradicted testimony of the psychologist, petitioner could not properly take care of herself or her children due to her poor judgement and susceptibility. Petitioner's poor judgement was exemplified by her actions leading up to the filing of the petition. Petitioner alleges that evidence that she could properly parent was introduced in the circuit court; however, petitioner has provided no transcripts of that evidence on appeal. The DHHR's evidence of petitioner's poor parenting is uncontradicted. Moreover, termination of petitioner's parental rights was necessary for the welfare of the children. While in petitioner's custody, the children were exposed to drug use and domestic violence that threatened their mental and physical health with no indication that their situation would change. We have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected and that it was necessary for the welfare of the children to terminate petitioner's parental rights. Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 13, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.